UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD STEPHEN DUFFERT,<br>Plaintiff,<br>v.<br>CITY OF ROSEVILLE, et al.,<br>Defendants. | No. 2:26-cv-2212 TLN AC (PS)<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff paid the filing fee and is proceeding in this matter pro se; pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21). Defendants have filed a motion to dismiss this case. ECF No. 7. Plaintiff opposed the motion (ECF No. 11) and filed motions to accept his late oppositions (ECF Nos. 11, 18) and for settlement discussions (ECF No. 13). The motions to accept the late oppositions (ECF Nos. 11, 18) are GRANTED in the interests of justice, and all of plaintiff's submissions have been considered. For the reasons set forth below, the undersigned recommends that defendants' motion to dismiss be GRANTED without leave to amend. The motion for settlement discussions (ECF Nos. 13) is accordingly DENIED as moot.

## I. Background

### A. The Complaint

Plaintiff brings this action for damages arising from alleged violations of his constitutional

and statutory rights by members of the Roseville Police Department on June 8, 2025, following a traffic stop. ECF No. 1 at 2. At the time of the stop, plaintiff had recently completed work as an armed security guard at a cannabis facility in Sacramento, California. Id. at 8. As part of his employment duties, plaintiff lawfully possessed and transported a registered CZ 9mm pistol. Id. At approximately 4:23 p.m., plaintiff was driving in Roseville when defendant officers Wyke and Figueroa initiated a traffic stop for alleged registration-related violations. Id. Plaintiff complied with all officer commands and put his hands in plain view. Prior to explaining the reason for the stop, Officer Figuroa opened the passenger-side door of plaintiff's vehicle and observed an empty or partially consumed beer container. Id. Plaintiff informed the officers that he had consumed only a small amount of alcohol earlier in the day and complied with all questioning. Id. Officer Figueroa subsequently observed plaintiff's firearm secured inside the vehicle. Id.

Upon observing the firearm, Officer Figueroa drew his service weapon and held plaintiff at gunpoint while Officer Wyke removed plaintiff from the vehicle. Id. at 9. Plaintiff informed the officers that the firearm was lawfully possessed and he had valid permits authorizing him to carry it in connection with his employment. Id. Despite his cooperation and explanations, the officers continued to detain and investigate plaintiff. Id. During the subsequent vehicle search, the officers located plaintiff's firearm, marijuana products, THC cartridges, and nitrous oxide canisters that plaintiff was transporting for work-related disposal purposes. Id. Though plaintiff was compliant with the officers, he was subjected to field sobriety testing. Id. Plaintiff told the officers that he suffered from ADHD and prior physical conditions that could affect portions of the screening, and that he had consumed marijuana several hours earlier for medical purposes. Id. Nevertheless, the officers administered a Preliminary Alcohol Screening ("PAS") at 5:22 p.m. Id. This test registered a .029 percent plod alcohol concentration. Id. at 10. Despite the low PAS reading, the officers arrested plaintiff for suspected driving under the influence and transported him to the Roseville Police Department for further evaluation. Id.

Upon arrival at the Roseville Police Department, plaintiff was cooperative and compliant. Id. Defendant Danielle Erikson, a Drug Recognition Expert ("DRE") employed by the Police Department, administered a DRE examination. Id. Defendant Wyke was present for portions of

the examination. Id. Plaintiff was escorted to a substantially dark room with armed police, unable to see what was happening. Id. at 11. During the pupil examination, Eriksen physically manipulated plaintiff's eyelids by forcibly holding his eyelids open and directed an intense flashlight into his right eye from close range. Id. Plaintiff believes the light was more intense than necessary, and was held in place for longer than necessary, causing immediate severe eye pain. Id. Plaintiff informed Erikson that his eye was injured and that he was experiencing visual disturbance after the flashlight was used. Id. Defendant Erikson repeated the flashlight test even after plaintiff's complaints. Id. at 12. Defendant Wyke observed the situation and failed to intervene. Id.

Immediately following his release, plaintiff continued to experience pain and visual disturbance in his right eye. Id. at 13. Plaintiff sought emergency treatment at Kiser Permanente Medical Center in Roseville on June 9, 2025. Id. at 14. Plaintiff alleges that he incurred medical expenses and may incur more medical expenses related to the injury. Id. at 15. Plaintiff also suffered loss of employment opportunities as a "result of the events described herein, including the resulting criminal proceedings and related consequences[.]" Id. at 16.

Plaintiff names as defendants the City of Roseville, Danielle Eriksen, Ethan Wyke, and Hayden Figuroa. ECF No. 1 at 1. He asserts the following causes of action: (1) excessive force and/or unreasonable search in violation of the Fourth Amendment against defendant Eriksen; (2) failure to intervene in violation of the Fourth Amendment against defendant Wyke; (3) municipal liability against the City of Roseville; (4) violation of the Bane Civil Rights Act against all defendants; (5) battery against Eriksen and the City; (6) negligence against all defendants; (7) intentional infliction against emotional distress against all defendants; and (8) negligent infliction of emotional distress against all defendants. ECF No. 1 at 19-36.

B. Motion to Dismiss

Defendants move to dismiss all causes of action for failure to state a claim upon which relief can be granted. ECF No. 7. Plaintiff opposes the motion. ECF Nos. 11, 12. Defendants submitted a reply (ECF No. 16), and the plaintiff submitted an unauthorized surreply (ECF No. 19), which the court has considered in the interest of justice.

## II. Analysis

A. Legal Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001). t

Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B. Plaintiff Has Failed to State a Claim for Violation of a Constitutional Right

1. Claims for Relief Under 42 U.S.C. § 1983

42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" by a person acting "under color of any statute, ordinance, regulation, custom, or usage." Gomez v. Toledo, 446 U.S. 635, 639 (1980). To succeed in asserting a claim under § 1983, a plaintiff must allege that an action (1) occurred "under color of state law," and (2) resulted in the deprivation of a constitutional or federal statutory right. Leer v. Murphy, 844 F.2d 628, 632–33 (9th Cir. 1988) (citations omitted). The first inquiry in any § 1983 suit is to identify the precise constitutional right that the defendant is alleged to have violated. Baker v. McCollan, 443 U.S. 137, 140 (1979).

2. Plaintiff Has Not Stated Any Claim Against Defendant Figueroa

Although the factual allegations of the complaint describe Officer Figueroa's involvement in the traffic stop which preceded plaintiff's arrest, none of plaintiff's causes of action are stated against him. Each cause of action is specifically asserted against defendants Eriksen and/or Wyke and/or the City of Roseville, and none of those claims are based on any conduct of Figueroa. See ECF No. 1 at 17-36.

3. The Facts Do Not Support a Fourth Amendment Excessive Force Claim

In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of

force. Graham v. Connor, 490 U.S. 386, 394 (1989) (citing Baker v. McCollan, 443 U.S. 137, 140 (1979)). Neither the Constitution nor § 1983 establishes a generalized "excessive force" standard, so a claim's validity turns on the specific constitutional standard that governs the right infringed. Id. at 393-394. The Fourth Amendment, by its terms, prohibits unreasonable searches and seizures. Here, because plaintiff challenges an alleged use of force while he was in the custody of police officers following his detention, the Fourth Amendment governs. See Fontana v. Haskin, 262 F.3d 871, 879 (9th Cir. 2001). Events at the police station following arrest are "acts of continuing dominion upon already seized suspects," id., to which Fourth Amendment standards apply.

The Fourth Amendment requires law enforcement officers to limit the amount of force used to that which is objectively reasonable in light of all the circumstances. Tennessee v. Garner, 471 U.S. 1, 7–8 (1985); Graham, 490 U.S. at 396. To determine whether a particular use of force is unreasonable, the court considers: "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." Williamson v. City of National City, 23 F.4th 1146, 1151 (9th Cir. 2022) (citing Graham, 490 U.S. at 397).

Here, plaintiff alleges that defendant Eriksen violated his right to be free from excessive force when she held his eyelids open and shined an excessively bright light into his eyes. Even liberally construed, plaintiff's factual allegations do not state a claim for the objectively unreasonable use of force. First, the type and amount of force required to temporarily hold open the eyelids of a compliant suspect—and plaintiff emphasizes his compliance throughout—cannot plausibly be described as more than minimal, even if the experience was painful in the moment. The use of a flashlight arguably does not constitute "force" at all, as there is no physical contact involved. If excessive force standards do apply to use of the light, the absence of contact means that the type and amount of force were relatively minor. Second, the government's interest in using the force necessary to conduct a DRE examination follows from its general interest in identifying impaired driving, which is a significant public safety matter. There was a strong

governmental interest in conducting a DRE exam of plaintiff, specifically, because his car contained a partially consumed container of beer, marijuana products, THC cartridges and nitrous oxide canisters, and plaintiff had admitted both drinking beer and using marijuana earlier in the day. Third and finally, the balance of these interests lies in the government's favor. The unpleasantness for plaintiff of having his eyelids held open and a bright light shined in his eyes is outweighed by the legitimate investigative need for the DRE examination. The complaint contains no facts which would make Eriksen's conduct objectively unreasonable.[1] Accordingly, plaintiff's DRE exam does not support a Fourth Amendment excessive force claim.

4. The Facts Do Not Support a Fourth Amendment Unreasonable Search Claim

In the alternative, plaintiff casts his challenge to the DRE pupil examination as an unreasonable search claim. ECF No. 1 at 1.[2] A search occurs where the government invades a place in which a person has a reasonable expectation of privacy. United States v. Jones, 565 U.S. 400, 406 (2012) (citing Katz v. United States, 389 U.S. 347, 351 (1967)). There can be no reasonable expectation of privacy in a portion of the body which is already exposed to view during a traffic stop or other detention. See Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). The observation or examination of what is already visible, even when accomplished by manipulation, involves only a de minimum intrusion which does not rise to the level of a search within the meaning of the Fourth Amendment. See Mimms, 434 U.S. at 111 (police may require driver to exit vehicle during traffic stop, as the intrusion is de minimus and driver is exposing little more of his person than already exposed); see also New York v. Class, 475 U.S. 106, 108

[1] Plaintiff does not allege any force being used to accomplish the DRE exam other than the holding apart of his eyelids and shining of the light. His purple prose describing Eriksen's actions and his resulting pain does not transform these into acts of police brutality.

[2] The face sheet of the complaint indicates that plaintiff is bringing distinct § 1983 claims for excessive force and for "unreasonable search and bodily intrusion." Id. The body of the complaint reproduces Claim One, Excessive Force in Violation of the Fourth Amendment, twice and contains no Claim Two or separately pleaded unreasonable search claim. Id. at 17-21. In a separate filing, plaintiff emphasizes that the gravamen of his complaint is the DRE exam. ECF No. 12 ("Plaintiff… wants to make clear that the central issue he is asking the Court to consider is the injury to his right eye during the DRE examination conducted on June 8, 2025.") Accordingly, and in light of the detailed factual allegations of the complaint, it is clear to the court that any putative unreasonable search claim is based on the same facts as the excessive force claim.

(1986) (no Fourth Amendment violation where officer moved papers obscuring vehicle's VIN, which is ordinarily viewable through front windshield).

Even assuming that the examination of plaintiff's pupils invaded his reasonable expectation of privacy and thus constituted a search, the factual allegations do not demonstrate unreasonableness. First, plaintiff repeatedly alleges that he was "cooperative and compliant" with all law enforcement requests both at the scene of the traffic stop (regarding field sobriety testing and Preliminary Alcohol Screening) and at the police station regarding the DRE examination. ECF No. 1 at 9-10. Although he does not state in so many words that he consented to the examination, he affirmatively alleges that he did not "resist any instruction" related to the procedure. Id., ¶ 60. These allegations are inconsistent with any theory that the search was unreasonable because warrantless. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (recognizing consent exception to warrant requirement).[3]

Next, the complaint does not allege that officers lacked probable cause for the arrest or to conduct the DRE exam. Any such theory is foreclosed in any case by the allegations that plaintiff was driving with an open alcoholic beverage container in his car, that the car also contained marijuana products, THC cartridges and nitrous oxide canisters, and that plaintiff admitted to both drinking alcohol and using marijuana earlier in the day. On these facts, plaintiff cannot plausibly claim that there was an insufficient legal basis to conduct the DRE examination, or that it was objectively unreasonable to conduct the pupil test.

As for the manner in which the "search" was conducted—the holding open of plaintiff's eyelids and use of a painfully bright light to test his pupil reactions—the allegations of the complaint fail to state a plausible claim for relief for the same reasons already discussed in relationship to the excessive force claim. The shining of a light into plaintiff's eyes is not remotely analogous—despite plaintiff's use of "bodily intrusion" language—to a search which literally intrudes *into* the human body and thus implicates greater constitutional concerns than a

---

[3] Plaintiff rather pointedly alleges that he did not consent to the use of unreasonable force, see e.g. ECF No. 1 at 29 (battery claims), but nowhere alleges that he did not consent to the examination.

visual search. See United States v. Fowlkes, 804 F.3d 954, 960-61 (9th Cir. 2015). Unlike, for example, an involuntary blood draw—which "involve[s] a compelled physical intrusion beneath [the] skin and into [the] veins"—the DRE's pupil examination does not "implicate[] an individual's most personal and deep-rooted expectations of privacy." Missouri v. McNeely, 569 U.S. 141, 148 (2013).[4] What plaintiff complains of, in sum, was not an objectively unreasonable search.

5. Plaintiff's Derivative Constitutional Claims Necessarily Fail

Because the allegations against defendant Eriksen fail to plausibly allege any violation of plaintiff's constitutional rights, the derivative claims against defendants Wyke and the City of Roseville also fail. Wyke's alleged failure to intervene in Eriksen's conduct (Claim Three) cannot support liability under § 1983 because Eriksen did not violate plaintiff's federal rights. See Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) ("police officers have a duty to intercede when their fellow officers violate the constitutional right of a suspect or other citizen."). And the City cannot be liable under any theory of § 1983 municipal liability (Claim Four) for the same reasons. See Horton by Horton v. City of Santa Maria, 915 F.3d 592, 602–03 (9th Cir. 2019) (municipal liability appropriate where some municipal action—policy, custom, or failure to train—caused the underlying violation of plaintiff's constitutional rights). Because Claims Three and Four are predicated on the existence of a constitutional violation committed by Eriksen, they must be dismissed.

C. Leave to Amend the Constitutional Claims Would Be Futile

Plaintiff's complaint is clearly pleaded, in compliance with Fed. R. Civ. P. 8(a), and contains sufficient detail to ascertain with confidence the factual predicate for plaintiff's putative

---

[4] Searches which constitute true bodily intrusions include involuntary blood draws, McNeely, supra; forcible stomach pumping, Rochin v. California, 342 U.S. 165 (1952); forced sedation, anoscopy, intubation, and bowel evacuation, George v. Edholm, 752 F.3d 1206, 1217-18 (9th Cir. 2014); surgical removal of a bullet, Winston v. Lee, 470 U.S. 753, 760-762 (1985); and physical body cavity searches, Fowlkes, 804 F.3d at 960-61. None of these types of searches are categorically prohibited by the Fourth Amendment, but the suspect's heightened privacy interests inform the highly fact-dependent reasonableness analysis under the Fourth Amendment. Plaintiff has no such heightened privacy interest in his pupils' response to light, as the DRE exam did not intrude on his bodily integrity.

claims. For the reasons already explained, those facts do not state a claim for unreasonable search or the excessive use of force in violation of the Fourth Amendment. Nothing in the complaint or in plaintiff's other filings suggests the existence of any additional facts that could result in a different conclusion as to the DRE examination. Although leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially when a plaintiff is pro se, Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc), the defects here are not ones which could be corrected by amendment.

Nor could the complaint be amended to state an alternative § 1983 claim for unlawful arrest. Although the complaint as drafted neither asserts nor implies such a claim, and plaintiff has emphasized that his primary concern is the shining of a bright light into his eyes during the DRE exam (ECF No. 12), he also appears to dispute the validity of his arrest. See ECF No. 11 (emphasizing issues related to "the circumstances of the arrest."); ECF No. 19 (challenging officers' treatment of plaintiff generally, including false accusation of gang activity, improper arrest and criminal charges). Amendment to add a false arrest claim would be futile. To prevail on a claim that an arrest amounted to an unreasonable seizure under the Fourth Amendment, a plaintiff must "demonstrate that there was no probable cause to arrest him." Norse v. City of Santa Clara, 629 F. 3d 966, 978 (9th Cir. 2010) (quoting Cabrera v. City of Huntington Park, 159 F. 3d 374, 380 (9th Cir. 1998)). Probable cause exists where the totality of facts known to the arresting officers supported a "fair probability" that a person committed a crime. Tatum v. City & County of San Francisco, 441 F. 3d 1090, 1094 (9th Cir. 2006). This is a low bar, see Vanegas v. City of Pasadena, 46 F. 4th 1159, 1164 (9th 2022), and it is readily met here given the presence of an open alcoholic beverage, marijuana products, THC cartridges and nitrous oxide canisters in plaintiff's car, and his admissions that he drank alcohol and used marijuana earlier in the day.[5]

In sum, the facts of plaintiff's encounter with Roseville Police on June 8, 2025, do not

[5] Moreover, plaintiff's objection to allegedly "incorrect or miscalculated" charges, ECF No. 11, does not suggest any cognizable constitutional claim. The validity of an arrest turns solely on the existence of probable cause, and a prosecutor's subsequent charging decision cannot form the basis of a § 1983 claim in most cases. See Kalina v. Fletcher, 522 U.S. 118, 125 (prosecutors are immune from § 1983 liability for their charging decisions and similar functions).

support a federal constitutional claim on any of the theories plaintiff has suggested. Accordingly, amendment could not result in the pleading of a viable claim under § 1983. Because amendment would be futile, leave to amend need not and should not be granted. See Cato v. United States, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

D. The Court Should Decline Supplemental Jurisdiction Over State Law Claims

Because plaintiff's federal causes of action must be dismissed without leave to amend, the court's exercise of supplemental jurisdiction over the remaining state law claims is purely discretionary. See Carlsbad Tech. Inc. v. HIF Bio, Inc., 556 U.S. 635, 640 (2009) (statutory supplemental jurisdiction over state law claims may be exercised at court's discretion after dismissal of federal claims); 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction where all claims over which it had original jurisdiction are dismissed). When federal claims are eliminated before trial, district courts should usually decline to exercise supplemental jurisdiction for reasons of comity and judicial economy. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994). Accordingly, the undersigned recommends that the court decline to exercise supplemental jurisdiction over plaintiff's Claims Five through Nine.

## III.

## Pro Se Plaintiff's Summary

The magistrate judge is recommending that the motion to dismiss be granted. The DRE examination does not support a Fourth Amendment excessive force or unreasonable search claim, because holding your eyes open and shining a bright light into them was not objectively unreasonable under all the circumstances, even if it caused you pain. Because you cannot maintain a § 1983 claim against defendant Eriksen based on the DRE exam, your § 1983 claims against defendants Wykes and the City of Roseville also fail. Because it is recommended that your § 1983 claims be dismissed, the court does not address the adequacy of your state law claims. Federal courts do not need to entertain state law claims once federal causes of action have been dismissed. It is therefore being recommended that your federal complaint be dismissed without prejudice and this case closed; if this happens you would be free to file your state law

claims in state court. If you disagree with this recommendation, you may file objections within 21 days. The district judge will make the final decision.

## IV. Conclusion

IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion to accept his late opposition (ECF No. 11) and motion to consider late filing (ECF No. 18) are GRANTED, and all of plaintiff's submissions have been considered.
2. Plaintiff's motion for the court to hold a settlement conference (ECF No. 13) is DENIED as moot in light of the recommendation below.

IT IS HEREBY RECOMMENDED THAT:

1. Defendants' motion to dismiss (ECF No. 7) be GRANTED without leave to amend;
2. That the complaint be dismissed without prejudice; and
3. This case be CLOSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: October 19, 2026

Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE